TRINA A. HIGGINS, United States Attorney (No. 7349)
MARK Y. HIRATA, Assistant United States Attorney (No. 5087)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: mark.hirata@usdoj.gov

FILED US District Court-UT
OCT 19 '22 PM03:02

SEALED

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | INDICTMENT |
| Plaintiff, | : | Counts 1 to 4: 18 U.S.C. §§ 1344(1) and (2) (Bank Fraud) |
| v. | : | |
| JEFFREY LANE MOWEN, | : | Counts 5 to 9: 18 U.S.C. § 1014 (False Statement to a Bank) |
| Defendant. | : | Counts 10 to 12: 18 U.S.C. § 1957 (Money Laundering) |
| | : | |
| | : | Count 13: 18 U.S.C. § 1512(b)(1) (Attempted Tampering with a Witness) |
| | : | |
| | : | Case: 2:22-cr-00389<br>Assigned To : Sam, David<br>Assign. Date : 10/19/2022 |

The Grand Jury charges:

## I.    BACKGROUND

At all times relevant to this Indictment:

1

1.      Defendant JEFFREY LANE MOWEN ("MOWEN") was a resident of Utah.

2.      IAM Digital Marketing Group, LLC ("IAM") was registered with the Utah Division of Corporations and Commercial Code, State of Utah, on March 5, 2019, with an address of 136 East South Temple, Fourteenth Floor, Salt Lake City, Utah 84111, and defendant MOWEN listed as its registered agent.

3.      Mountain America Credit Union ("MACU"), Celtic Bank, Harvest Small Business Finance ("HSBF"), and Utah Community Credit Union ("UCCU") were "financial institutions," as defined under 18 U.S.C. § 20.

4.      United States Small Business Administration ("SBA") is an executive-branch agency of the United States federal government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees.

5.      In addition to traditional SBA funding programs, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which was signed into law on March 27, 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

2

6.      One of these new programs was the SBA Paycheck Protection Program ("PPP"), which offered loans designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA would forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities.

7.      Interested applicants applied through an existing SBA lender or any other participating federally insured financial institution. Borrower requirements included the business was in operation on February 15, 2020 and either had employees for whom the business paid salaries and payroll taxes or paid independent contractors as reported on a Form 1099-MISC. Borrowers were required to submit such documentation as was necessary to establish eligibility such as payroll processor records, payroll tax filings, Form 1099-MISC, or income and expenses from a sole proprietorship.

8.      The PPP application process required applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contained information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. The application also included the following certifications and authorizations, among others:

- The Applicant is eligible to receive a loan under the rules in effect at the

3

time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

- The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

- The funds will be used for to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

- I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than 30 years and/or a fine of not more than $1,000,000.

## II.    SCHEME AND ARTIFICE TO DEFRAUD

9.      Beginning in or around April 2020 and continuing through to around July 2021, in the District of Utah and elsewhere,

**JEFFREY LANE MOWEN,**

4

defendant herein, devised and intended to devise a scheme and artifice to defraud a financial institution and to obtain money and property under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

10.     In executing and attempting to execute the scheme and artifice to defraud, and in furtherance thereof, defendant MOWEN:

- Knowingly made false and fraudulent pretenses, representations, and promises to MACU, Celtic Bank, and HSBF in violation of 18 U.S.C. § 1344 (Bank Fraud);

- Knowingly made false statements and caused false statements to be made to MACU, Celtic Bank, and HSBF in violation of 18 U.S.C. § 1014 (False Statements to a Bank); and

- Knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity (Bank Fraud), to wit, proceeds of fraudulently obtained money, in violation of 18 U.S.C. § 1957 (Money Laundering).

### III.     ACTS IN EXECUTION AND FURTHERANCE OF THE SCHEME AND ARTIFICE TO DEFRAUD

In execution and furtherance of the scheme and artifice to defraud, defendant MOWEN committed and caused to be committed the following acts:

**Mountain America Credit Union (MACU) – PPP Loan 1**

11.     On or about April 16, 2020, defendant MOWEN submitted through MACU a PPP loan application for $260,625 ("PPP Loan 1"), along with supporting documents,

on behalf of IAM, making and causing to be made one or more of the following false and

fraudulent representations to MACU:

- IAM's average monthly payroll was approximately $104,250 (represented in application and attached IAM payroll roster); in truth and fact, IAM had no legitimate payroll;

- IAM had 14 employees (represented in application and attached IAM payroll roster and IRS Form W-4s); in truth and fact, IAM had no legitimate employees;

- IAM had a physical and business address of 136 East South Temple, 14th floor, Salt Lake City, Utah 84116 (represented in application and attached Utah Division of Corporation records for IAM); in truth and fact, IAM had no leased office space on the 14th floor of the building at this address;

- PollyWog Press International owned 100% of IAM (represented in application); in truth and fact, defendant MOWEN owned at least 33% of IAM;

- Answering "no" to a question on the application asking "Is . . . any individual owning 20% or more of the equity of the Applicant . . . on probation or parole?" (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

- Answering "no" to a question on the application asking whether "[w]ithin the last 5 years, for any felony, has . . . any owner of the Applicant . . . been convicted . . . been placed on any form of parole or probation . . . ?" Ownership is referenced in the application as "any individual owning 20% or more of the equity of the Applicant." (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

On the PPP loan 1 application, defendant MOWEN represented himself as IAM's

6

primary contact and agent/manager.

12.     MACU denied the PPP loan 1 application.

**Celtic Bank – PPP Loan 2**

13.     On or about April 22, 2020, defendant MOWEN submitted through Celtic

Bank a PPP loan application for $260,625 ("PPP Loan 2"), along with supporting

documents, on behalf of IAM, making and causing to be made one or more of the

following false and fraudulent representations to Celtic Bank:

- IAM's average monthly payroll was approximately $104,250 (represented in application and attached IAM payroll roster); in truth and fact, IAM had no legitimate payroll;

- IAM had 14 employees (represented in application and attached IAM payroll roster and IRS Form W-4s); in truth and fact, IAM had no legitimate employees;

- IAM had a physical and business address of 136 East South Temple, 14th floor, Salt Lake City, Utah 84116 (represented in application and attached Utah Division of Corporation records for IAM); in truth and fact, IAM had no leased office space on the 14th floor of the building at this address;

- PollyWog Press International owned 100% of IAM (represented in application); in truth and fact, defendant MOWEN owned at least 33% of IAM;

- Answering "no" to a question on the application asking "Is . . . any individual owning 20% or more of the equity of the Applicant . . . on probation or parole?" (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

- Answering "no" to a question on the application asking whether "[w]ithin

7

the last 5 years, for any felony, has . . . any owner of the Applicant . . . been convicted . . . been placed on any form of parole or probation . . . ?" Ownership is referenced in the application as "any individual owning 20% or more of the equity of the Applicant." (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

On the PPP loan 2 application, defendant MOWEN represented himself as IAM's primary contact and agent/manager.

14.     On or about May 7, 2020, Celtic Bank approved and funded PPP loan 2, resulting in a deposit on May 11, 2020 of approximately $247,489 into IAM's business checking account (ending in 4126) at Utah Community Credit Union. Defendant Mowen used, or caused to be used, most of the foregoing funds for purposes not authorized by the PPP, including but not limited to: (1) rental payments on two homes; (2) cashier's checks payable to B.H. (or jointly with her children, S.G., M.J., and L.J.) to refund an investment placed with defendant MOWEN; (3) cashier's checks to E.M., whom defendant MOWEN directed to deposit and transfer funds back to him; (4) cashier's checks jointly payable to defendant MOWEN and one of his sons, including J.B.M. and M.C.M., of which J.B.M. and M.C.M. neither received nor had any knowledge; and (5) cashier's checks jointly payable to defendant MOWEN/IAM.

15.     On or about July 20, 2021, defendant MOWEN paid off PPP Loan 2 using funds loaned by J.G., but mischaracterized by defendant MOWEN as payment for "Rehab Marketing Services" rendered. Defendant MOWEN has not paid back any of

8

these funds loaned by J.G.

**Celtic Bank – PPP Loan 3**

16.     On or about February 4, 2021, defendant MOWEN submitted through Celtic Bank a second PPP loan application for an additional $147,938 ("PPP Loan 3").

17.     During the processing of the PPP Loan 3 application, Celtic Bank requested from defendant MOWEN additional documentation regarding IAM. In response, defendant MOWEN provided Celtic Bank with an IRS Form 940 for 2020 falsely representing approximately $974,000 in total payments to IAM employees. Celtic Bank continued to ask for additional documentation, including a copy of defendant MOWEN's driver's license. Defendant MOWEN thereafter terminated his efforts to pursue PPP Loan 3.

**Harvest Small Business Finance – PPP Loans 4 and 5**

18.     On or about April 27, 2021, defendant MOWEN submitted through Harvest Small Business Finance ("HSBF") a PPP loan application for $20,000 ("PPP Loan 4") on behalf of himself as a sole proprietor, making and causing to be made one or more of the following false and fraudulent representations to HSBF:

- Answering "no" to a question on the application asking "Is . . . any individual owning 20% or more of the equity of the Applicant . . . on probation or parole?" (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

- Answering "no" to a question on the application asking whether "[w]ithin the last 5 years, for any felony, has . . . any owner of the Applicant . . . been convicted . . . been placed on any form of parole or probation . . . ?" Ownership is referenced in the application as "any individual owning 20% or more of the equity of the Applicant." (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

19.     On or about April 29, 2021, HSBF approved and funded PPP Loan 4,

resulting in a deposit on May 12, 2021 of approximately $20,000 into defendant

MOWEN's personal checking account (ending in 9023) at Key Bank.

20.     On or about May 28, 2021, defendant MOWEN submitted through HSBF a

second PPP loan application for $20,000 ("PPP Loan 5") on behalf of himself as a sole

proprietor, making and causing to be made one or more of the following false and

fraudulent representations to HSBF:

- Answering "no" to a question on the application asking "Is . . . any individual owning 20% or more of the equity of the Applicant . . . on probation or parole?" (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

- Answering "no" to a question on the application of whether "[w]ithin the last 5 years, for any felony, has . . . any owner of the Applicant . . . been convicted . . . been placed on any form of parole or probation . . . ?" Ownership is referenced in the application as "any individual owning 20% or more of the equity of the Applicant." (represented in application); in truth and fact, defendant MOWEN had been convicted of a felony in *United States v. Jeffrey Lane Mowen*, Case No. 2:09-cr-00098-DB, and was on supervised release (a form of probation) within the 5-year period.

21.     On or about May 28, 2021, HSBF approved and funded PPP Loan 5, resulting in a deposit on June 4, 2021 of approximately $20,000 into defendant MOWEN's personal checking account (ending in 9023) at Key Bank.

22.     To date, defendant MOWEN has not paid back PPP Loans 4 or 5.

**Counts 1 to 4**
**18 U.S.C. §§ 1344(1) and (2)**
**(Bank Fraud)**

23.     By this reference, the Grand Jury incorporates the allegations in paragraphs 1 through 22 above, as though fully restated herein.

24.     On or about the dates listed below, in the District of Utah,

**JEFFREY LANE MOWEN,**

defendant herein, executed and attempted to execute, a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, from MACU, Celtic Bank, and HSBF, financial institutions within the meaning of 18 U.S.C. § 20, through the following acts in furtherance and execution of the scheme:

| Count | Date (on or about) | Description |
|---|---|---|
| 1 | 04/16/2020 | Online PPP Loan 1 application submitted to MACU. |
| 2 | 05/11/2020 | Deposit of PPP Loan 2 funds in the amount of $247,489 into IAM's business checking account (ending in 4126) at Utah Community Credit Union. |
| 3 | 05/12/2021 | Deposit of PPP Loan 4 funds in the amount of $20,000 into defendant MOWEN's personal account (ending in 9023) at Key Bank. |

| 4 | 06/04/2021 | Deposit of PPP Loan 5 funds in the amount of $20,000 into defendant MOWEN's personal account (ending in 9023) at Key Bank. |

All in violation of 18 U.S.C. §§ 1344(1) and (2).

### Counts 5 to 9
### 18 U.S.C. § 1014
### (False Statement to a Bank)

25.     By this reference, the Grand Jury incorporates the allegations in paragraphs 1 through 22 above, as though fully restated herein.

26.     On or about the dates listed below, in the District of Utah,

**JEFFREY LANE MOWEN,**

defendant herein, knowingly made and caused to be made a false statement, as described below, to MACU, Celtic Bank, and HSBF, financial institutions within the meaning of 18 U.S.C. § 20, in connection with a PPP loan application:

| Count | Date (on or about) | Description |
|---|---|---|
| 5 | 04/16/2020 | Online PPP Loan 1 application and supporting documents submitted to MACU containing one or more of the false statements and representations identified in paragraph 11 above. |
| 6 | 04/22/2020 | Online PPP Loan 2 application submitted to Celtic Bank containing one or more of the false statements and representations identified in paragraph 13 above. |
| 7 | 02/04/2021 | Online PPP Loan 3 application submitted to Celtic Bank containing one or more of the false statements and representations identified in paragraph 17 above. |

12

| 8 | 04/27/2021 | Online PPP Loan 4 application submitted to HSBF containing one or more of the false statements and representations identified in paragraph 18 above. |
| 9 | 05/28/2021 | Online PPP Loan 5 application submitted to HSBF containing one or more of the false statements and representations identified in paragraph 20 above. |

All in violation of 18 U.S.C. § 1014.

## Counts 10 to 12
## 18 U.S.C. § 1957
## (Money Laundering)

27.     By this reference, the Grand Jury incorporates the allegations in paragraphs 1 through 22 above, as though fully restated herein.

28.     On or about the dates listed below, in the District of Utah and elsewhere,

**JEFFREY LANE MOWEN,**

defendant herein, knowingly engaged and attempt to engage in the following monetary transaction by, through, and to UCCU, a financial institution within the meaning of 18 U.S.C. § 20, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, and such property was derived from the specified unlawful activity of Bank Fraud as alleged above, including but not limited to the following instances:

| Count | Date (on or about) | Description |
|-------|--------------------|-------------|
| 10 | 05/12/2020 | Withdrawal of $22,404 from IAM business checking account |

13

| | | |
|---|---|---|
| | | at UCCU for May IAM "payroll" checks to: B.H. ($5,750), S.G./B.H. ($5,750), M.J./B.H. ($5,450), and L.J./B.H. ($5,450). |
| 11 | 05/13/2020 | Withdrawal of $97,768 from IAM business checking account at UCCU for May and/or June IAM "payroll" checks to, among others: J.B.M./defendant MOWEN (total of two checks, each for $5,500); M.C.M./defendant MOWEN (total of two checks, each for $5,500), C.C.M./defendant MOWEN (total of two checks, each for $5,500), and E.M. (total of four checks, two for $5,675 and two for $4,675). |
| 12 | 05/15/2020 | Withdrawal of $40,896.95 from IAM business checking account at UCCU for payments to: IAM/defendant MOWEN ($10,000), IAM/defendant MOWEN ($10,000), IAM/defendant MOWEN ($10,000), and IAM/defendant MOWEN ($891.95). |

All in violation of 18 U.S.C. § 1957.

## Count 13
## 18 U.S.C. § 1512(b)(1)
## (Attempted Tampering with a Witness)

29.     By this reference, the Grand Jury incorporates the allegations in paragraphs 13, 14, and 15 above, as though fully restated herein.

30.     On or about an unknown date but no later than in or around late Spring/early Summer 2022, defendant MOWEN learned about a federal grand jury ("Grand Jury") investigation convened in the District of Utah looking into the PPP fraudulent loan activities summarized in this Indictment. During this time, defendant MOWEN also learned the Grand Jury had subpoenaed J.G. to testify in the District of

14

Utah about funds J.G. paid to defendant MOWEN and used by him to pay off PPP

Loan 2.

      31.    In or about June and July 2022, defendant MOWEN knowingly and

intentionally attempted to corruptly persuade another person, J.G., with intent to

influence and prevent the testimony of J.G. in an official proceeding, to wit: a federal

grand jury investigation in the District of Utah, by preparing and causing J.G. to sign an

Affidavit containing false statements regarding, among other things, J.G.'s actual

residence, proper service of the Grand Jury subpoena on J.G., and alleged threats against

J.G. by "duly authorized agents." Defendant MOWEN also caused J.G. to mail the false

Affidavit to the FBI's Salt Lake City field office in the District of Utah.

All in violation of 18 U.S.C. § 1512(b)(1).

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of any offense violating 18

U.S.C. § 1014 and/or 18 U.S.C. § 1344, the defendant shall forfeit to the United States of

America any property constituting, or derived from, proceeds obtained directly or

indirectly, as a result of the scheme to defraud. The property to be forfeited includes, but

is not limited to: A money judgment equal to the value of any property not available for

forfeiture as a result of any act or omission of the defendant(s) for one or more of the

reasons listed in 21 U.S.C. § 853(p), and substitute property as allowed by 18 U.S.C. §

982(b) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property. The property to be forfeited includes, but is not limited to: A money judgment equal to the value of all property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p), and substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 1512, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to: A money judgment equal to the value of all property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p), and substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

APPROVED:

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

TRINA A. HIGGINS
United States Attorney

_____
MARK Y. HIRATA
Assistant United States Attorney

16